**In re Anonymous No. 32 D.B. 83**

Disciplinary Board Docket No. 32 D.B. 83.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania,

FRIEDMAN, *Member,* August 21, 1991—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## HISTORY OF PROCEEDINGS

Petitioner, [ ], was disbarred by Supreme Court order dated September 23, 1985. The order, effective October 23, 1985, vacated the Supreme Court order of December 21, 1984, which had suspended petitioner from the practice of law in light of his conviction of two counts of theft by failure to make the required disposition of funds, in violation of 18 Pa.C.S. §3927, for which he was sentenced to three years probation by the [ ] County Court of Common Pleas.

On September 1, 1989, the Supreme Court issued a per curiam order granting petitioner's petition nunc pro tunc for retroactive modification of the effective date of petitioner's disbarment to August 12, 1984.

On March 20, 1989, petitioner filed a petition for reinstatement and reinstatement questionnaire.

The matter was referred to Hearing Committee [ ], which consisted of [ ]. A hearing on the matter was held on February 15, 1990.

On March 29, 1990, petitioner filed a post-hearing brief in support of his petition for reinstatement.

The Office of Disciplinary Counsel filed a brief to the Hearing Committee on April 25, 1990, in support of petitioner's request for readmission to the Pennsylvania bar.

On October 31, 1990, Hearing Committee [ ] filed its report and recommended that petitioner's reinstatement be granted.

The matter was adjudicated at the January 4, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

We adopt the findings of fact which are contained in the report of Hearing Committee [ ] and supported by documentary and testimonial evidence.

(1) [ ], petitioner, was born on November 9, 1948, and admitted to the practice of law in the Commonwealth of Pennsylvania on May 6, 1974. He is now 41 years of age.

(2) He was disbarred on the basis of his commingling and converting funds (totaling $1,625.92) which had been sent by a client's ([A]) insurance carrier ([B] Insurance Company) for the purpose of compensating his client's treating physician, [C], M.D., in late 1979 and early 1980. [Petitioner] also forged the signature of Dr. [C] on one of the three checks.

(3) The Disciplinary Board of the Supreme Court of Pennsylvania found that:

"Respondent willfully misappropriated entrusted funds and used them for his own purposes. He did

not hold these funds in an escrow account, but cashed one check and deposited the proceeds of two other checks into his personal checking account. Respondent used the proceeds for his own purposes, the balance in his account dropped below the amount required to reimburse Dr. [C]." *In re Anonymous No. 32 D.B. 83,* 37 D.&C.3d 1989 (1984).

(4) [Petitioner] was convicted of theft by failure to make required disposition of these funds (second degree misdemeanors) in the [ ] County Court of Common Pleas in 1984. He was found not guilty of forgery, although he conceded at the reinstatement hearing that he did forge Dr. [C's] name on one of the checks.

(5) As a result of his criminal conviction, [petitioner] was sentenced on May 14, 1984, to two concurrent three-year terms of probation and ordered to undergo a drug and alcohol evaluation by the probation department.

(6) Petitioner made complete restitution to Dr. [C] in 1984.

(7) Petitioner has no unsatisfied judgments, federal tax liens or outstanding claims by the Client Security Fund, and there is no evidence that he practiced law during the period beginning August 12, 1984, the effective date of his suspension.

(8) Petitioner began using drugs, primarily marijuana and alcohol, in 1967. He continued using mood-altering substances through college at [D] University and during his first few years of law school at [E] University but does not believe he became addicted at that time.

(9) Petitioner dates his drug addiction from approximately 1972 when, as the result of an accident, he

was treated with morphine on which he quickly became dependent.

(10) From late 1972 through 1985, petitioner addictively used a variety of drugs including heroin, alcohol and cocaine.

(11) By the late 1970s petitioner's addiction was out of control, and this, combined with the emotional associated depression, made his life unmanageable and seriously impaired his judgment.

(12) From 1980 through 1984, petitioner had at least six psychiatric admissions for detoxification and inpatient drug rehabilitation treatment at [ ] area psychiatric hospitals. His last admission was at the [F] Institute from June 23, 1984, through July 3, 1984.

(13) At [F] Institute, petitioner was introduced to the Twelve Step Program of Alcoholics Anonymous and Narcotics Anonymous and he began to pursue the road to sobriety.

(14) Petitioner has remained drug-free for over four years, and presently attends on the average four AA/NA meetings per week. He has also acted as a sponsor in AA, helping another alcoholic in his pursuit of sobriety.

(15) During the time relevant to the underlying disciplinary proceedings (from 1979 to 1984), petitioner's mental condition was seriously disturbed, his judgment was impaired and his life was unmanageable due to his addiction and depression.

(16) Since July 1986, petitioner has been employed as a family service specialist with the New Jersey Division of [ ] Services in [ ]. In this position he has investigated allegations of abuse and neglect of

children. His work performance was exceptional and he was given two promotions during his tenure.

(17) Petitioner has been on the Board of Directors of the [G] County Council on Alcoholism and Drug Addiction since July 1988. This is an advisory organization which works with local agencies and the state of New Jersey in providing and lobbying for services for alcoholics and drug addicts throughout the state.

(18) [Petitioner] took the Pennsylvania basic practice course at [ ] University in [ ], Pennsylvania, in August 1988, and has read the *Atlantic Reporter* advance sheets on a regular basis to maintain his currency, competency and learning in the law.

(19) The Office of Disciplinary Counsel introduced no evidence reflecting negatively on his moral qualifications for reinstatement.

## CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate consideration of his petition for reinstatement.

(2) Petitioner has met his burden of proving by clear and convincing evidence, that he possesses the moral qualifications, competency and legal learning necessary to practice law in the Commonwealth of Pennsylvania.

(3) Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar, nor subversive of the interests of the public.

## DISCUSSION

The issue before the Disciplinary Board is whether this petition for reinstatement to the Pennsylvania bar

should be granted. The examination of this question is a two-step process.

First, the Disciplinary Board must ascertain whether the conduct which led to petitioner's disbarment was so egregious as to preclude his reinstatement at this time. Consideration of this threshold question requires an analysis of whether a sufficient amount of time has passed since the misconduct occurred during which petitioner has engaged in a qualitative period of rehabilitation. See *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986).

The initial question to be answered when a disbarred attorney seeks reinstatement is whether the misconduct which led to disbarment is so offensive as to preclude reinstatement. When contemplating a request for readmission to the bar, "a review of the underlying offense is required as an initial step in determining eligibility for reinstatement." *Office of Disciplinary Counsel v. [H],* at 4 D.B. 76 at 4. The [H] case recognizes that there are certain acts of misconduct so repugnant to the integrity of the bar and contradictory to public interest that no passage of time or rehabilitation can cure the injustice the petitioner's reinstatement would cause.

The inquiry in the instant matter is, therefore, whether petitioner's commingling and conversion of $1,625.92 in funds entrusted to him for payment of his client's medical bills is so egregious as to preclude consideration of his reinstatement to the Pennsylvania bar. Although we are cognizant of the serious nature of petitioner's misconduct, we are also aware that his regrettable actions are not so patently offensive as to warrant permanent exclusion from the bar. We arrive at this decision by considering whether petitioner's misconduct

was so opposite the foundations of our legal system as to forever prohibit his resumption of the role of court officer because his integrity has been so compromised. We are supported in this conclusion by the Office of Disciplinary Counsel's recommendation that petitioner be eligible for reinstatement and an examination of other Pennsylvania reinstatement cases. See *Office of Disciplinary Counsel v. [I]*, 26 D.B. 81, 7 D.&C.4th 260 (1990) (attorney subsequently reinstated after disbarment for delivery of bribe to a public official, giving false testimony under oath after a grant of immunity, failing to make appropriate disclosure to a federal grand jury and law enforcement officers, and "laundering" checks for a public official); *In re [J]*, 49 D.&C.3d 298 (1988) (attorney readmitted to the bar after several convictions for making material untrue statements to the Office of Housing and Urban Development, fraudulent lot sales and mail fraud); *Office of Disciplinary Counsel v. [K]*, Nos. 4 and 35 D.B. 79, 5 D.&C.4th 557 (1989) (attorney who unsatisfactorily handled client affairs and voluntarily withdrew from the bar subsequently reinstated.)

Having determined that petitioner's request for reinstatement is properly before the Disciplinary Board because his misconduct is not so egregious as to automatically avert readmission to the Pennsylvania bar, the next query is whether there has been the passage of a quantitative period of time since disbarment during which petitioner has participated in qualitative rehabilitation. *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 506 A.2d 872 (1986); *Office of Disciplinary Counsel v. [K]*, Nos. 4 and 35 D.B. 79, 5 D.&C.4th 557 (1989).

The Supreme Court's issuance of an order granting a petition nunc pro tunc for retroactive modification of the effective date of petitioner's disbarment to August 12, 1984, means that petitioner has been removed from the practice of law in Pennsylvania for six and one-half years. The critical question is whether petitioner has used this hiatus period wisely and engaged in rehabilitation for the problems which led to his disbarment.

The documentary evidence, as noted by the Office of Disciplinary Counsel, "provides a picture of an individual whose pattern of addictive behavior began in 1967, initiating a decline which reached its nadir in the late '70s on his move to [ ]. The evidence reflects that from 1980 to July 1984, (petitioner) had a minimum of six psychiatric admissions for detoxification and inpatient rehabilitation. The record reveals pervasive addiction which permeated every aspect of his life. Furthermore, the misconduct resulting in this disbarment happened during the period of addiction, prior to his rehabilitative period."

The issue, therefore, is whether petitioner has successfully engaged in rehabilitation for his addiction problems during the past six and one-half years.

At the hearing on the reinstatement, petitioner presented extensive, noncontroverted evidence of his recovery from his substance addictions. Numerous members of the bar attested to his commitment and progress in various self-help groups and his recent appointment to the Board of Directors of the [G] County, New Jersey Council on Alcoholism and Drug Addiction, a voluntary position for which no compensation is received. In light of this clear and convincing evidence, we conclude

that respondent has satisfactorily demonstrated his successful participation in qualitative rehabilitation during the period of his disbarment.

Since petitioner's misconduct is not so offensive as to prevent the current consideration of his request for reinstatement, and he has proven that he has undergone meaningful rehabilitation, the next inquiry is whether petitioner possesses the moral qualifications and learning in the law necessary to practice law in Pennsylvania. See Rule 203, Pa.R.D.E. Petitioner bears the burden of proving, by clear and convincing evidence, that he has the moral qualifications and learning in the law required in Pennsylvania, and that his resumption of practice will not be subversive to the interests of the public nor detrimental to the integrity of the bar. See Rule 218(c)(3)(i), Pa.R.D.E.

Examples of reinstatement bids in which the petitioning lawyer has carried his burden of proving he has the moral qualifications necessary to resume the practice of law are the [K] and [J] cases. *Office of Disciplinary Counsel v. [K]*, Nos. 4 and 35 D.B. 79, 5 D.&C.4th 557 (1989); *In re [J]*, 49 D.&C.3d 298 (1986). In both instances, the petitioner sustained his burden of proof through the presentation of favorable testimony by highly regarded attorneys.

Petitioner has introduced a wealth of similar character testimony from various members of the bar, and also amply demonstrated his successful conquest over substance addiction. We therefore conclude, petitioner has met the burden imposed on him by Rule 218(c)(3)(i), Pa.R.D.E., of proving his moral qualification for readmission to the Pennsylvania bar.

Petitioner must also prove, according to Rule 218(c)(3)(i), Pa.R.D.E., that he possesses the learning in the law necessary for a member of the Pennsylvania bar. We are satisfied he has sustained his burden of proof through his August 1988 attendance at the Pennsylvania Bar Institute at [ ] University and reading of *Atlantic Reporter* advance sheets.

Finally, petitioner must prove his reinstatement will not be detrimental to the integrity of the bar or interests of the public. Petitioner has satisfactorily shown that his readmission to the bar will not hurt the interests of the public or the bar.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that the petition for reinstatement of [petitioner] to practice law in the Commonwealth of Pennsylvania be granted.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of said petition for reinstatement.

Messrs. Brown and Hill did not participate in the adjudication.

## ORDER

And now, August 21, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated February 27, 1991, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.